IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN P. HINTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03 C 2311 |
| ) | |
| USA FUNDS, ) | Hon. Mark Filip |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff John Hinton ("Plaintiff" or "Hinton") filed suit against, among others not relevant to the disposition of the pending motion, defendant USA Funds ("Defendant"). Plaintiff alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*[1] Specifically, in his second amended complaint, Hinton asserts two counts against USA Funds. First, Hinton alleges that USA Funds willfully and negligently violated 15 U.S.C. § 1681s-2(b) (Count V). Second, Hinton alleges that USA Funds violated 15 U.S.C. § 1681b (Count VI).

Defendant has moved for summary judgment on these claims. For the following reasons, Defendant's motion is granted in part and denied in part. In this regard, summary judgment is granted on Count V to the extent that Count V asserts a claim for willful noncompliance under 15 U.S.C. §§ 1681n and 1681s-2(b). Summary judgment is denied to the extent Count V asserts a claim for negligent noncompliance under 15 U.S.C. §§ 1681o and 1681s-2(b). Summary judgment is denied on Count VI.

---

[1] Various defendants have since been dismissed, leaving Hinton's claims against USA Funds the sole remaining claims in this case. The dismissed defendants, as well as the various claims asserted against them, are therefore not addressed by this opinion, except to the extent that they are relevant to Hinton's claims against USA Funds.

## BACKGROUND

The suit arises out of credit-reporting issues related to Hinton's student loans. The parties agree that Trans Union LLC, a credit reporting agency, did not accurately report Hinton's student loan history. (Def.'s St. ¶ 65.) What is presently at issue in this suit, however, is whether USA Funds, a guarantor in the student loan business (*id.* ¶ 2), has incurred any liability to Hinton as a consequence of that inaccurate reporting. (The parties' relationship is discussed below.) According to Hinton, Defendant, in violation of 15 U.S.C. § 1681s-2(b), willfully and negligently failed to conduct reasonable investigations of his disputed student loan accounts. (Pl.'s Resp. to Def.'s Mot. for Summ. J. (D.E. 87) at 6-10.) Hinton further argues that Defendant, in violation of 15 U.S.C. § 1681b, obtained his credit report for an impermissible purpose. (*Id.* at 10-15.)

I.   Hinton's Student Loan History

Hinton received eight disbursements on four student loans that Bank One originated between July 1995 and September 1996. (Def.'s St. ¶ 5.[2]) Bank One subsequently sold these

---

[2]   The facts relevant to the disposition of this motion are drawn from Defendant's Local Rule 56.1 Statement of Material Facts (cited to in this opinion as Def.'s St. ¶ __) and Plaintiff's Local Rule 56.1 Statement of Additional Facts (cited to in this opinion as Pl.'s St. ¶ __). The Court notes that Local Rule 56.1 "responses that mistakenly echo [Federal Rule of Civil Procedure] 8(b), which applies only to responsive pleadings, by stating that a party does not have sufficient information to admit or deny a fact, or any responses that fail to cite to any record evidence to support a dispute, are ineffective in the summary judgment context." *Wilkins v. Riveredge Hosp.*, No. 02-9232, 2004 WL 906010, at *2 n.3 (N.D. Ill. Apr. 26, 2004); *see also, e.g., Williams v. Elyea*, 163 F. Supp. 2d 992, 994 (N.D. Ill. 2001) (citing *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 626 (7th Cir. 1998)). As a result, any facts that a party improperly purports to controvert in its Local Rule 56.1 response are deemed admitted. *See, e.g., Wilkins*, 2004 WL 906010, at *2 n.3 (citing *McGuire v. United Parcel Serv.*, 152 F.3d 673, 675 (7th Cir. 1998)). Several of Plaintiff's Local Rule 56.1 responses are deficient (*see, e.g.*, Pl.'s Local Rule 56.1(b)(3)(A) Resp. to Def.'s Statement of Material Facts ¶¶ 10-14, 18-22, 28-36, 40, 41, 43, 45, 46, 48, 53, 55-62, 72), and, therefore, to the extent Defendant's statements are properly supported by admissible evidence, the Court deems them admitted for purposes of this motion.

loans to Union Bank. (*Id.* ¶ 6.) Although Hinton objects to the term "defaulted," it is undisputed that Hinton failed to make timely payments on these loans and that what at least Defendant would characterize as a "default" occurred in November of 1999. (*Id.* ¶ 7.) Union Bank requested that USA Funds assist with these defaulted student loans in December of 1999. (*Id.* ¶ 8.) In response, USA Funds purchased two of the student loans from Union Bank on January 21, 2000, and purchased the other two loans on January 28, 2000. (*Id.* ¶ 9.) Defendant suggests in its opening summary judgment brief that Defendant's purchase of these loans constituted a "guarantee" of Hinton's student loans. (Def.'s Mem. in Supp. of its Mot. for Summ. J. (D.E. 81) at 14 (citing Def.'s St. ¶¶ 8, 9).)

The United States Department of Education consolidated Hinton's student loans on or about September 12, 2000. (Def.'s St. ¶ 16.) Prior to the consolidation, Hinton owed an outstanding balance on his student loans accounts (the "Accounts") to USA Funds. (*Id.* ¶ 15.) As part of the consolidation process, however, and on or about September 12, 2000, the Department of Education paid to USA Funds, in full, the outstanding balance of Hinton's Accounts. (*Id.* ¶ 17.) Thus, Hinton's obligations to Defendants were extinguished on or about this date.

Sallie Mae, a loan-servicing company (*id.* ¶ 10), serviced Hinton's defaulted loans after they were purchased by USA Funds (*id.* ¶ 13), which included reporting on the status of Hinton's Accounts. Specifically, after the consolidation, Sallie Mae, on behalf of USA Funds, reported a $0 balance on Hinton's Accounts to all credit bureaus on September 30, 2000 (*id.* ¶ 18), and also reported that Hinton's defaulted Accounts were Credit Bureau Account code "62" (*id.* ¶ 19), which code indicates that an account is "paid in full [and] was a collection amount" (*id.* ¶ 20).

Sallie Mae again (on behalf of Defendant) reported a $0 balance on Hinton's defaulted Accounts to all credit bureaus on October 31, 2000 (*id.* ¶ 21), and that Hinton's defaulted Accounts were Credit Bureau Account code "62" (*id.* ¶ 22).

II.     Inaccurate Information on Hinton's Trans Union Credit Report

Despite Sallie Mae's reporting, Hinton's Trans Union credit report continued to reflect Account information that was no longer accurate after the student-loan consolidation. In this regard, Hinton obtained Trans Union credit reports dated September 23, 2002, April 18, 2003, and December 8, 2003, each of which indicated that Trans Union was reporting that Hinton had accounts with Defendant that had balances, that those accounts were past due, and that the accounts were being written off as bad debt. (Pl.'s St. ¶¶ 1, 6, 11.) As noted above, the parties agree that this information was inaccurate. (Def.'s St. ¶ 65.)

Hinton disputed the inaccurate student loan account information contained on his Trans Union credit report with Trans Union twice after contacting Defendant regarding the Account information on October 3, 2002 (Pl.'s St. ¶ 2; Def.'s St. ¶ 42). (It is Sallie Mae's policy to direct borrowers with credit bureau inquiries to contact the credit bureau directly regarding any dispute regarding a defaulted student loan that Defendant has guaranteed. (Def.'s St. ¶ 43.).) Specifically, Hinton, after contacting the Defendant, wrote to Trans Union on October 4, 2002 (the "October Dispute"), to dispute the USA Funds information on his credit report. (Pl.'s St. ¶ 3.) In response, Trans Union sent Defendant several Automated Consumer Dispute Verification ("ACDV") forms on October 25, 2002, indicating to Defendant that Hinton was disputing the accuracy of the information reported for the Accounts. (*Id.* ¶ 4.) The October Dispute, however, as discussed below, did not result in the information contained in Hinton's Trans Union credit

4

report being corrected, and he once again (apparently in April 2003) contacted Trans Union to dispute the USA Funds Account information (the "April Dispute"). (*Id.* ¶ 7.) As a consequence of the April Dispute, Trans Union once again sent Defendant several ACDV forms on April 19, 2003, indicating to Defendant that Hinton was, once again, disputing the accuracy of the information Trans Union was reporting for the Accounts. (*Id.* ¶ 8.)

Both the October and April disputes resulted in Defendant identifying errors with respect to Trans Union's reporting of Hinton's Accounts. With respect to the October Dispute, Sallie Mae, after reviewing Hinton's student loan repayment history and conducting an investigation, determined that the Trans Union ACDV forms inaccurately indicated that the first date of delinquency was January 2000 and that there was a balance owing on the account. (Def.'s St. ¶ 45.) Despite Sallie Mae having identified these errors, however, Hinton subsequently received a report from Trans Union dated November 19, 2002, that reported the investigation results for the USA Funds Accounts as "Verified, No Change." (Pl.'s St. ¶ 5.) (Sallie Mae's procedures regarding its part in correcting the inaccurate information are discussed below.) Indeed, a Trans Union credit report that Hinton obtained dated April 18, 2003, indicated that Trans Union was still reporting his USA Funds Accounts as having balances, being past due, and being charged off as bad debt. (*Id.* ¶ 6). With respect to the April Dispute, Trans Union again sent USA Funds several ACDV forms on April 19, 2003, indicating to Defendant that Hinton was, once again, disputing the accuracy of the information reported for the Accounts. (*Id.* ¶ 8.) After reviewing Hinton's student loan repayment history and conducting another investigation, Sallie Mae determined that the ACDV forms again inaccurately indicated the first date of delinquency on the loans as January 2000 and further indicated that there was a balance owing on the Accounts.

(Def.'s St. ¶ 55.) And this inaccurate information was still not corrected—Hinton received a report from Trans Union dated May 9, 2003, which, once again, reported the investigation results for USA Funds as "Verified, No Change." (Pl.'s St. ¶ 10.) A Trans Union report dated December 8, 2003, reported Hinton's USA Funds accounts as still having balances, being past due, and being charged off as bad debt. (*Id.* ¶ 11.)

III. Defendant's Procedure for Investigating Disputes

Given the foregoing facts, the following issue (among others) has crystalized in this case: whether Defendant's procedure with respect to the investigations of Hinton's October and April Disputes subjects Defendant to any potential liability under the FCRA. Defendant's employees generally do not perform the investigation of consumer credit disputes. (Def.'s St. ¶ 23.) Rather, Defendant contracts with Sallie Mae for the investigation of all consumer credit disputes. (*Id.* ¶ 24.) Under that contract, Salle Mae conducts any investigation of consumer credit disputes relating to loans that Defendant has guaranteed. (*Id.* ¶ 25.) Thus, it was Sallie Mae, and not Defendant, that performed the investigations regarding Hinton's Account disputes.

Sallie Mae has certain general procedures it follows after receiving notice of a consumer dispute (like Hinton's). Prior to June 2003, credit bureaus transmitted consumer disputes relating to defaulted student loans that Defendant guaranteed to Sallie Mae electronically through Credit Community Network Service software provided by GE information services. (*Id.* ¶ 33.) The electronically submitted consumer dispute information that credit bureaus forwarded to Sallie Mae was referred to as an ACDV form. (*Id.* ¶ 34.) As part of its procedure for responding to ACDV forms prior to June 2003, Sallie Mae indicated that a defaulted student loan was a "Code 35" or "Verified as Reported." (*Id.* ¶ 36.) "Code 35" and "Verified as Reported" are codes in an

ACDV reporting manual issued by Associated Credit Bureaus, Inc., which is a trade association comprised of the major credit reporting bureaus. (*Id.* ¶ 37.) Sallie Mae uses these notations in response to an ACDV form to indicate that a defaulted loan is valid and should be reported to all credit bureaus. (*Id.* ¶ 39.) If Sallie Mae determined that any changes or corrections needed to be made on the ACDV form to reflect accurately the defaulted student loan owned by Defendant, Sallie Mae indicated those changes in the "Change Data as Shown" and the "Consumer Message" fields of the ACDV form. (*Id.* ¶ 40.) When Sallie Mae responds to an ACDV form, the response is forwarded to all credit bureaus and consumer reporting agencies, which includes Trans Union, Equifax, Experian, and Innovis. (*Id.* ¶ 41.)

It is undisputed that Defendant (through Sallie Mae) included certain notations in its responses to the ACDV forms that Trans Union sent it regarding Hinton's Account. Defendant contends that these notations identify certain changes that needed to be made to make Hinton's Account information accurate, while Hinton takes issue with the sufficiency of Defendant's responses. The following facts regarding these notations are largely undisputed as a consequence of Hinton's failure to comply with Local Rule 56.1 (*see* note two, *supra*).

A. The October ACDV Responses

The record reveals that Sallie Mae's response to the October 2002 Trans Union ACDV forms ("October Response") indicated that certain changes needed to be made by Trans Union so that Hinton's credit information relating to his defaulted student loan accounts would be reported accurately (*id.* ¶ 47) and that Hinton's defaulted student loans were a "Code 35" and "Verified as Reported," which signaled that these loans were valid and should be reported to credit bureaus (*id.* ¶ 48). The October Response also indicated in a field marked "Change Data as Shown" that

7

the correct first date of delinquency on Hinton's student loan accounts was February 1999 (*id.* ¶ 49), that the correct balance owing on Hinton's student loan accounts was $0 (*id.* ¶ 50), and that Hinton's defaulted student loan was "Paid Collection" (*id.* ¶ 51). The October Response also indicated in the field marked "Consumer Message" that Hinton's defaulted student loan was "PIF [Paid In Full] Consolidation—We Report For 7 Years." (*Id.* ¶ 52.)

B. The April ACDV Responses

Sallie Mae's responses to the Trans Union ACDV forms received in April 2003 (the "April Responses") once again indicated that certain changes needed to be made by Trans Union so that Hinton's credit information relating to his defaulted student loan accounts would be reported accurately (*id.* ¶ 57) and that Hinton's defaulted student loan accounts were "Code 35" and "Verified as Reported" (*id.* ¶ 58). Furthermore, the April Responses, like the October Responses, also indicated in the "Change Data as Shown" that the correct first date of delinquency on Hinton's student loan Accounts was February 1999 (*id.* ¶ 59), that the correct balance owing on Hinton's Accounts was $0 (*id.* ¶ 60), and that Hinton's defaulted student loans were "Paid Collection" (*id.* ¶ 61). The "Consumer Message" field contained in the April Responses also indicated that Hinton's Accounts were "PIF [Paid In Full]." (*Id.* ¶ 62.)

ANALYSIS

IV. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williamson v. Ind. Univ.*, 345 F.3d 459, 462 (7th Cir. 2003). "The moving party has the initial burden of demonstrating that it is entitled to summary judgment." *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex*, 477 U.S. at 323).

V.  Summary Judgment Is Appropriate in Part on the 15 U.S.C. § 1681s-2(b) Claim

Plaintiff alleges that USA Funds violated Section 1681s-2(b)(1) of the FCRA. This section provides, in relevant part, that:

> After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—(A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency . . . ; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.

15 U.S.C. § 1681s-2(b)(1).[3] This section, requires that, "upon notification of a dispute, a person

---

[3]    In his response to Defendant's motion for summary judgment, Hinton purports to quote 15 U.S.C. § 1681s-2(b)(1)(E), in support of his argument that Defendant had a duty to "permanently block the reporting" of inaccurate information. (D.E. 87 at 6.) On October 25, 2004, the Court issued a minute order requesting that the parties submit briefs on the issue of whether 15 U.S.C. § 1681s-2(b)(1)(E) was in effect at times relevant to this suit. (D.E. 92.) In this regard, the Court noted that on December 4, 2003, 15 U.S.C. § 1681s-2(b)(1) was amended to add a new provision imposing certain additional duties in connection with investigations of consumer disputes, one of which was the duty identified in subsection 2(b)(1)(E). *See* Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, sec. 314(b), § 623(b)(1)(E), 117 Stat. 1952, 1995-96; *see also Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 n.1 (4th Cir. 2004). In response to the Court's order, Hinton conceded that "subsection (E) was not in effect" at times relevant to this suit. (D.E. 94 at 2.) A claim alleging a violation of 15 U.S.C. § 1681s-2(b)(1)(E) is, therefore, not properly before the Court.

who has furnished information to consumer reporting agencies must conduct an investigation of the information in dispute and provide the results of the investigation to the consumer reporting agenc[ies]." *Donley v. Nordic Properties, Inc.*, No. 99-4677, 2003 WL 22282523, at *5 (N.D. Ill. Sept. 30, 2003); *see also Schmit v. Trans Union LLC*, No. 03-1643, 2004 WL 785098, at *2 (N.D. Ill. Apr. 12, 2004).

As noted above, Hinton is arguing that Defendant, in violation of 15 U.S.C. § 1681s-2(b), willfully and negligently failed to comply with its duties under the FCRA, including its duty to conduct reasonable investigations of his disputed student loan accounts. The Seventh Circuit Court of Appeals appears to not have addressed the issue of what standard (a reasonableness standard or otherwise) for conducting investigations applies under Section 1681s-2(b)(1). *See McKeown v. Sears Roebuck & Co.*, 335 F. Supp. 2d 917, 936 (W.D. Wis. 2004). District courts within the Seventh Circuit, as well as courts within this district, however, have treated Section 1681s-2(b)(1) as implying a reasonableness requirement. *See, e.g., Westra v. Trans Union LLC*, No. 03-1181, 2004 WL 1794482, at *1 (N.D. Ill. Aug. 5, 2004) (Moran, J.); *McKeowon*, 335 F. Supp. 2d at 936 (collecting cases); *Buxton v. Equifax Credit Info., Servs. Inc.*, No. 02-6288, 2003 WL 22844245, at *2-*4 (N.D. Ill. Dec. 1, 2003) (Holderman, J.) (conducting a reasonableness-of-investigation analysis); *Wade v. Equifax, Inc.*, No. 02-3205, 2003 WL 22089694, *2-*4 (N.D. Ill. Sept. 8, 2003) (Manning, J.) (same). This is also the position adopted by the Fourth Circuit Court of Appeals (apparently the only court of appeals that has addressed the issue), *see Johnson v. MBNA Am., NA*, 357 F.3d 426, 431 (4th Cir. 2004), and the parties assume such a requirement here (D.E. 87 at 6; D.E. 81 at 9-11).

Precedent teaches that the reasonableness of an investigation under Section 1681s-2(b) "is

generally a question of fact reserved for the jury." *Westra*, 2004 WL 1794482, at *1 (citing *Crabill v. Trans Union*, 259 F.3d 662, 664 (7th Cir. 2001)); *see also Wade*, 2003 WL 22089694, at *2. In addition, the Seventh Circuit has instructed, in connection with a different section of the FCRA, that "[t]he determination of the 'reasonableness' of [a] defendant's procedures . . . is treated as a factual question even when the underlying facts are undisputed. It therefore cannot be resolved on summary judgment unless the reasonableness . . . of the procedures is beyond question . . . ." *Crabhill*, 259 F.3d at 664.

A. Summary Judgment Is Appropriate on Plaintiff's Claim That Defendant Willfully Violated 15 U.S.C. § 1681s-2(b)

The Defendant has moved for summary judgment on Hinton's willful noncompliance with Section 16812-s(b) claim. A defendant willfully violates the FCRA when it "knowingly and intentionally commit[s] an act [in violation of the FCRA] in conscious disregard for the rights of others." *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 931 (N.D. Ill. 2000) (citing *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)); *see also Zahran v. Transunion Corp.*, No. 01-1700, 2003 WL 1733561, at *7 (N.D. Ill. Mar. 31, 2003). The Court notes that "[t]he mere existence of inaccuracies in [a] credit report[] does not itself amount to an act in conscious disregard of . . . rights supporting a finding of willful noncompliance with the FCRA." *Zahran*, 2003 WL 1733561, at *7.

Seventh Circuit precedent generally teaches (in a case that did not involve FCRA claims) that summary judgment is to be used sparingly in the context of claims involving questions of intent. *See Alexander v. Erie Ins. Exch.*, 982 F.2d 1153, 1160 (7th Cir. 1993). Case law suggests that "[s]ummary judgment is appropriate, however, even when issues of [intent] are involved, if

in response to a properly supported motion for summary judgment, the non-movant offers no specific facts to show that there is a genuine issue for trial." *In re George's Comet Motorcars, Ltd.*, 100 B.R. 403, 405 (N.D. Ill. Bankr. 1989) (citing *Anderson*, 477 U.S. at 256). And other Seventh Circuit precedent teaches that a "movant is entitled to summary judgment if the burden is on the nonmovant to establish the state of mind and the nonmovant has failed to come forward with even circumstantial evidence from which a jury could reasonably infer the relevant state of mind." *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir. 1989).

Given these teachings, the Court agrees with at least one other district court that found that for a plaintiff's willful noncompliance claim to survive summary judgment, the plaintiff must set forth some "evidence demonstrating conscious disregard or deliberate and purposeful actions necessary to make out a claim for willful noncompliance under the FCRA." *Spector v. Experian Info. Servs., Inc.*, 321 F. Supp. 2d 348, 357 (D. Conn. 2004) (internal quotations omitted); *see also Zahran*, 2003 WL 1733561, at *7 ("The plaintiffs must set forth evidence that shows deliberate and purposeful actions taken against them."). In this regard, one district court has noted that "[c]ourts have generally found willful violations in cases where [credit reporting agencies] have intentionally misled consumers or concealed information from them." *Reed v. Experian Info. Solutions, Inc.*, 321 F. Supp. 2d 1109, 1116 (D. Minn. 2004) (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 372 (5th Cir. 2001)). With this analytical background in mind, the Court turns to the parties' arguments.

Defendant argues that Hinton's willful noncompliance with Section 1681s-2(b) claim cannot survive summary judgment because Hinton has failed to "point to any evidence

demonstrating that [Defendant] knowingly or intentionally committed an act in conscious disregard" for Hinton's rights under the FCRA. (D.E. 88 at 3; *see also* D.E. 81 at 9.) The Court agrees. Hinton did not address Defendant's arguments on this point in any meaningful way: he merely mentions (in a footnote) the standard for willfulness, without discussing—let alone identifying evidence—regarding how that standard could be satisfied on the facts of this case. (D.E. 87 at 5 n.1.) Although Hinton does argue (under the general heading that the Defendant willfully failed to comply with Section 1681s-2(b)) that the Defendant's investigation of his dispute was unreasonable (*id.* at 6-10), general allegations of unreasonableness cannot forestall summary judgment on a Section 1681s-2(b) claim for willful violations of the FCRA. *See Reed,* 321 F. Supp. 2d at 1116 ("Here, plaintiff simply alleges that defendants [sic] procedures were unreasonable and therefore violated the [FCRA]. Taken to its logical conclusion, his argument would permit statutory and punitive damages in every FCRA case, which is not the intent of the statute.").

In sum, Hinton has presented no evidence that Defendant willfully did not comply with Section 1681s-2(b). To the contrary, the undisputed evidence establishes that Defendant, through Sallie Mae, conducted two investigations with regard to the disputed information. As discussed below, whether those investigations are reasonable is a question for the jury, but Plaintiff has not argued in any meaningful way—let alone produced evidence—that Defendant willfully failed to comply with Section 1681s-2(b) during the course of these investigations. The Court, therefore, grants summary judgment in favor of Defendant on Count V to the extent Count V asserts a claim for willful noncompliance with Section 1681s-2(b).

B. Summary Judgment Is Not Appropriate on the Negligent Noncompliance Claim

Defendant also moves for summary judgment on Hinton's negligent noncompliance with Section 1681s-2(b) claim. As noted above, summary judgment is appropriate in favor of Defendant on this claim only if the reasonableness of Defendant's investigation is beyond question. Defendant argues, without citation to the record or authority, that it is, indeed, "beyond question that [its] consumer credit dispute investigation procedures . . . were reasonable." (D.E. 81 at 11.) Defendant also contends that Hinton "has failed to raise a single fact that could permissibly give rise to the inference that the dispute-processing procedures [that Defendant] had in place was [sic] unreasonable, either in its application by [Defendant] specifically or its application in the credit reporting industry generally." (*Id.* at 12.)

The problem with Defendant's arguments is that the Court has no evidence before it (in terms of expert testimony or any other evidence) that demonstrates what the standards are in the credit industry concerning investigations under 15 U.S.C. § 1681s-2(b)(1). *See McKeown*, 335 F. Supp. 2d at 937. For instance, the Court has no evidence before it as to whether and to what extent furnishers of information like Defendant generally contract with third-parties to conduct the investigations required by 15 U.S.C. § 1681s-2(b). Nor can the Court fairly hold, at least on the record assembled, that the procedures utilized by Sallie Mae in this case are *per se* reasonable as a matter of law. *See Crabill*, 259 F.3d at 664 ("The determination of the 'reasonableness' of [a] defendant's procedures . . . is treated as a factual question even when the underlying facts are undisputed.") As Plaintiff argues in his response, "[t]he information that [Defendant] transmitted in its messages and codes after the first investigation . . . caused Trans Union to consider the accounts 'Verified, No Change.'" (D.E. 87 at 10.) Defendant responded to the second

14

investigation in essentially the same manner, which resulted in Trans Union, once again, considering the accounts "Verified, No Change." (*Id.*) The party responsible for this, as Defendant argues, may have been Trans Union. In this regard, Defendant's procedures may have been reasonable, and it may be that Trans Union incorrectly interpreted the responses to the April and October ACDVs—a point Defendant may certainly argue to a jury. But the Court cannot hold that the reasonableness of Defendant's investigation is beyond question, at least on the present record. Summary judgment is therefore denied on Count V to the extent Count V asserts a claim against Defendant for negligent noncompliance with Section 1681s-2(b).

VI.   Summary Judgment Is Inappropriate on the 15 U.S.C. § 1681b Claim

Count VI of Plaintiff's complaint alleges that Defendant violated 15 U.S.C. § 1681b when it "accessed [P]laintiff's credit files and information impermissibly and through the use of false pretenses, without [P]laintiff's consent or knowledge, without [a] legitimate business reason to do so and then never informed the [P]laintiff of these illegal and impermissible accesses." (Compl. ¶¶ 47-48.) Section 1681b(f) of the FCRA provides that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section . . . ." 15 U.S.C. § 1681b(f). Section 1681b(a)(3)(F)(i), in relevant part, authorizes a person to use or obtain a consumer report where that person "has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer . . . ." 15 U.S.C. § 1681b(a)(3)(F)(i).

Defendant argues that it is entitled to summary judgment on Count VI because it accessed Plaintiff's credit report "[i]n order to evaluate the validity of Plaintiff's claim" in this suit. (D.E.

81 at 13.) According to Defendant, "preparation for litigation, in this case, is a permissible purpose for USA Funds' access of Plaintiff's credit report."[4] (*Id.*) In this regard, Defendant attempts to shoehorn the facts of this case into the text of Section 1681b(a)(3)(F)(i), arguing that its guarantee of Plaintiff's student loans in January 2000 was a "business transaction" and that this lawsuit, which was filed in April of 2003 (approximately 31 months after Defendant was paid in full, extinguishing Plaintiff's financial obligations to Defendant) is "in connection with" that business transaction.

Defendant relies heavily on *Allen v. Kirkland & Ellis*, No. 91-8271, 1992 WL 206285, at *2 (N.D. Ill. Aug. 17, 1992). *Allen*, however, is materially distinguishable. For instance, in that case, the defendants argued "that [one of the defendants] requested [the plaintiff's] credit report in preparation for litigation regarding funds" that the plaintiff allegedly owed. *Id.* The defendants further argued that purpose was permissible under 15 U.S.C. § 1681b(3)(E), the predecessor[5] to 15 U.S.C. § 1681b(a)(F)(3)(i), which made it permissible for someone who "has

---

[4] Defendant argues that Plaintiff has "conceded" that preparation for litigation is a permissible purpose for obtaining Plaintiff's credit report under 15 U.S.C. § 1681b. (D.E. 81 at 13; D.E. 88 at 10.) The Court expressly reserved ruling on this issue in its opinion denying Defendant's motion to dismiss Count VI. *See Hinton v. Trans Union LLC*, No. 03-2311, 2004 WL 1114744, at *3 n.2 (N.D. Ill. May 4, 2004). Defendant has not argued that Plaintiff is bound by these purported concessions, and precedent would not support such a finding. *See McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998) ("The doctrine of judicial estoppel requires . . . that the party sought to be estopped have obtained a favorable judgment or settlement on the basis of a legal or factual contention that he wants to repudiate in the current litigation.") (internal citation omitted).

[5] The Consumer Credit Reform Act of 1996, Pub. L. No. 104-208 § 2403, 110 Stat. 3009 (1996), amended and re-labeled the "business need" exception of the FCRA. *See Duncan v. Handmaker*, 149 F.3d 424, 427 n.3 (6th Cir. 1998); *Minter v. AAA Cook County Consol.*, No. 02-8698, 2004 WL 1630781, at *4 n.6 (N.D. Ill. July 19, 2004). In this regard, Section 1681b(3)(E), the section discussed in *Allen*, was relabeled Section 1681b(a)(F)(3)(i). *See Minter*, 2004 WL 1630781, at *4 n.6.

16

a legitimate business need for the information in connection with a business transaction involving the consumer" to request a credit report. *Id.* The district court agreed with the defendants. *Id.* In doing so, the court noted that "[t]he legal dispute which justified [one of the defendant's] request for plaintiff's credit report related to the collection of an alleged business debt." *Id.*, at *3 n.4. In this regard, the court reasoned that the debt was a business transaction and the lawsuits based on them were in connection with these transactions for purposes of 15 U.S.C. § 1681b(3)(E). *See id.*, at *2. The district court also reasoned that "the collection of allegedly unpaid accounts constitutes 'a legitimate business need' within the meaning of [15 U.S.C. § 1681b(3)(E)]." *Id.* The court qualified its holding by stating that "[a] different result may have been reached if the report had been acquired in connection with litigation that did not involve liability for a commercial obligation deriving from a business transaction between the parties." *Id.*, at *3 n.4. In the case *sub judice*, it is undisputed that Plaintiff did not owe a debt to Defendant at the time Defendant accessed Plaintiff's credit report. Indeed, Plaintiff's financial obligations to Defendant were satisfied in September 2000. Moreover, Defendant argues that it accessed Plaintiff's credit report "[i]n order to evaluate the validity of Plaintiff's claim" (D.E. 81 at 13)—a purpose neither expressly authorized by the text of 15 U.S.C. § 1681b(a)(3)(F)(i) nor supported by the holding of *Allen*.

Defendant also relies on *Spence v. TRW Inc.*, 92 F.3d 380 (6th Cir. 1996), which is also a case involving 15 U.S.C. § 1681b(3)(E). In *Spence*, the Sixth Circuit held that the filing of a lawsuit gave the defendant, a consumer reporting agency, reason to believe that the party requesting the credit report had a "legitimate business need" for the plaintiff's credit report, "such a need having arisen in connection with the preparation of [the party's] defense to [a]

17

lawsuit." *Id.* at 383. Thus, the Sixth Circuit held that the defendant did not violate Section 1681b. *Id.* Two years later, however, in *Duncan v. Handmaker*, 149 F.3d 424, 425 (6th Cir. 1998), the Sixth Circuit court revisited this issue, holding "that the FCRA does not generally permit consumer reports to be procured [in order to defend against a lawsuit]." The Sixth Circuit noted that "while a lawsuit occasionally may give rise to a 'legitimate business need' for a consumer report, trial preparation generally does not fall within the scope of § 1681b." *Id.* at 427. (internal citation omitted). The Sixth Circuit also noted that as the litigation "moves outside the realm of debt collection . . . it is less likely—although not altogether impossible—that an attorney will obtain the report for a purpose that is within the purview of [the FCRA]." *Id.* at 428.

Defendant, in its reply brief, argues that "[p]ursuant to case law from this district, USA Funds'[s] access to Plaintiff's consumer report constitutes a permissible purpose under the FCRA." (D.E. 88 at 12.) In support, Defendant cites *Minter v. AAA Cook County Consolidation*, No. 02-8698, 2004 WL 1630781, at *4 (N.D. Ill. July 19, 2004). In *Minter*, the court noted that "[p]reparation for litigation can qualify as a permissible purpose under the broad language of § 1681b(a)(3)(F)." *Id.* (citing *Allen*, 1992 WL 206285, at *2.) The defendants argued they "obtained [the plaintiff's] credit report to aid in defending against [the plaintiff's] claim that they . . . breached their contractual obligation to pay [the plaintiff's] creditors on a timely basis." *Id.*, at *5. The court stated, without deciding the issue, that "[t]he filing of the lawsuit against [the defendant] provided a 'legitimate business need' for the credit report." *Id.* (citing *Spence*, 92 F.3d at 383).

The case law identified by the parties on this issue, however, is only instructive to the

extent that it sheds light on whether, in the context of the specific facts of this case, Defendant's accessing of Plaintiff's credit report for this litigation is covered by specific statutory language of 15 U.S.C. § 1681b(a)(3)(F)(i). At this time, the Court cannot, given Defendant's treatment of the issue in its summary judgment papers, rule on whether Defendant's admitted purpose for accessing Plaintiff's credit report—*i.e.*, to test "the validity" of Plaintiff's claim—is covered by Section 1681b(a)(3)(F)(i). More specifically, even assuming that Defendant's purpose would be permissible, there are at least two potential material unresolved factual issues that make the grant of summary judgment in Defendant's favor inappropriate. First, Plaintiff identifies a potential material factual issue regarding whether Plaintiff ever initiated a business transaction with regard to Defendant, such that Section 1681b(a)(3)(F)(i) would be applicable. (D.E. 87 at 14; *see also* Def.'s St. ¶ 9 (stating that Defendant purchased four student loans from Union Bank but not providing any further information about the genesis of the commercial relationship between Plaintiff and Defendant).) Second, Plaintiff argues that Defendant "did not give a general or specific certification about its purpose [for accessing Plaintiff's credit report]—as required by the FCRA—to Trans Union . . . ." (*Id.*) Section 1681b(f)(2) of the FCRA provides, in relevant part, that the purpose for which a credit report is obtained must be "certified . . . by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f)(2).

In its reply brief, Defendant did not address these issues. As a consequence, the Court cannot (and will not, in the absence of meaningful briefing on these issues) reach the ultimate issue of whether Defendant's permissible purpose argument is meritorious. Summary judgment is, therefore, denied on Count VI.

## CONCLUSION

For the foregoing reasons, summary judgment is granted on Count V to the extent that Count V asserts a claim for willful noncompliance under 15 U.S.C. §§ 1681n and 1681s-2(b). Summary judgment is denied on Count V to the extent Count V asserts a claim for negligent noncompliance under 15 U.S.C. §§ 1681o and 1681s-2(b). Summary judgment is denied on Count VI.

So ordered.

Dated: *March 30, 2005*

Mark Filip
United States District Judge
Northern District of Illinois